2001-NMCA-079

32 P.3d 812

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Benjamin GUILLEN, Defendant–Appellant.**

No. 21,831.

Court of Appeals of New Mexico.

Sept. 10, 2001.

Patricia A. Madrid, Attorney General, Katherine Zinn, Ass't Attorney General, Santa Fe, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Sheila Lewis, Ass't Appellate Defender, Santa Fe, NM, for Appellant.

*OPINION*

PICKARD, Judge.

{1} Defendant appeals the trial court's refusal to grant him presentence confinement credit for time spent under house arrest pursuant to an electronic monitoring program. The trial court ruled that it lacked the authority to grant this credit based on its understanding of the mandatory sentencing

provision of the DWI statute, NMSA 1978, § 66–8–102 (1999). We hold that the conditions of Defendant's participation in the electronic monitoring program, coupled with the fact that Defendant was subject to punishment for the crime of escape under NMSA 1978, § 30–22–8.1 (1999), satisfied the requirements of *State v. Fellhauer*, 1997–NMCA–064, 123 N.M. 476, 943 P.2d 123, and entitled Defendant to credit. We reverse Defendant's sentence and remand with instructions to grant Defendant presentence credit for the time spent in the electronic monitoring program.

## FACTS AND PROCEEDINGS

{2} Defendant was indicted on charges of driving while under the influence, driving on a suspended or revoked license, no proof of financial responsibility, and careless driving. Because he could not meet the original bond conditions set by the trial court, Defendant spent three months, less six days, in jail. At a subsequent hearing on Defendant's motion for reduction of bond, the trial court agreed to release Defendant from jail on the condition that he participate in an electronic monitoring program. In addition to imposing the standard conditions of release pursuant to Rules 9–302 and 9–303 NMRA 2001, the trial court imposed the following additional conditions:

(1) attend outpatient alcohol treatment and fully comply with all conditions of the treatment program;

(2) execute a release authorizing the treatment program and the electronic monitoring program to provide information to the court, the district attorney, and defense counsel;

(3) submit to random urinalysis three times a week for the first month and thereafter as required by the electronic monitoring program; and

(4) remain at his home at all times except to attend alcohol counseling, work, or religious services.

Furthermore, the alcohol treatment program was instructed to immediately report any missed meetings to the electronic monitoring program, the court, the district attorney, and defense counsel.

{3} At the time the trial court set the conditions of Defendant's release, the court cautioned Defendant that upon acceptance into the electronic monitoring program, Defendant would be required to comply with all of the special conditions imposed by the court. The court informed Defendant that it had filed a pre-signed arrest warrant that would be activated upon notification from either the treatment program or the electronic monitoring program that Defendant had failed to comply with any of the conditions of his release. The pre-signed arrest warrant was filed approximately one week after Defendant's release from jail.

{4} Defendant successfully participated in the electronic monitoring program and in alcohol treatment from the time of his release until he was sentenced seven and one-half months later. Defendant was sentenced after pleading guilty to felony DWI (fourth offense) and driving with a suspended or revoked license. At sentencing, Defendant asked the trial court to award him presentence confinement credit for the time spent in the electronic monitoring program. The trial court concluded that it was not authorized to grant Defendant's request. The court sentenced Defendant to eighteen months imprisonment, twelve months of which were suspended, with unsupervised probation for one year. The court awarded Defendant presentence confinement credit for the approximately three months that Defendant spent in jail prior to his release on bond. Defendant now appeals the trial court's denial of credit for the time he spent in the electronic monitoring program.

## DISCUSSION

{5} As a preliminary note, the State implies, without arguing, that presentence confinement credit should not apply to the mandatory sentences set forth in the DWI statute, Section 66–8–102. Our Supreme Court has presumed that a trial court is required to grant presentence credit, for official confinement, to defendants convicted of a fourth or subsequent DWI offense. *See State v. Martinez*, 1998–NMSC–023, ¶ 10, 126 N.M. 39, 966 P.2d 747 ("Therefore, we presume, based on [NMSA 1978, § ] 31–20–12 [ (1977) ] and the Legislature's use of the

word 'felony' in Section 66–8–102, that the Legislature intended to require that trial courts grant presentence credit, for official confinement, to defendants convicted of a fourth or subsequent offense of DWI."). We need not address whether credit for presentence confinement other than jail would apply to mandatory sentences for aggravated, second, or third DWI offenses because such sentences are not at issue in this case. *See id.* ¶ 20, 966 P.2d 747 (declining to reach question because not at issue, but noting distinction in language describing credits for non-felony DWI ("for 'jail' time served prior to the conviction") and felony DWI (for " 'official confinement' ")).

**{6}** In *Fellhauer*, we noted that our analysis of the law of presentence confinement credit is guided by a desire to "simplify the sentencing court's inquiry to the extent possible" by providing a clear guide that does not require fact intensive inquiries into whether specific conditions of release subject a defendant to jail-type confinement. 1997–NMCA–064, ¶¶ 15–16, 123 N.M. 476, 943 P.2d 123. As such, we must decide, as a matter of law, whether house arrest under a community custody release program entitles a defendant to presentence credit for time spent in the program. We review issues involving the interpretation and application of law de novo. *See State v. Roman,* 1998–NMCA–132, ¶ 8, 125 N.M. 688, 964 P.2d 852.

{7} In *Fellhauer,* 1997–NMCA–064, ¶ 17, 123 N.M. 476, 943 P.2d 123, we held that time spent outside of jail may qualify as "official confinement" for the purposes of receiving presentence confinement credit under Section 31–20–12,

> when (1) a court has entered an order releasing the defendant from a facility but has imposed limitations on the defendant's freedom of movement, OR the defendant is in the actual or constructive custody of state or local law enforcement or correctional officers; and (2) the defendant is punishable for a crime of escape if there is an unauthorized departure from the place of confinement or other non-compliance with the court's order.

The State concedes that the conditions of Defendant's release meet the second prong of the *Fellhauer* test. *See* § 30–22–8.1 (defining crime of escape from a community custody release program such as an electronic monitoring program). At issue in this case, is whether the other conditions of release were sufficiently restrictive to meet the alternative requirements of the first prong.

{8} Defendant argues that the time spent under house arrest pursuant to the community custody release program qualifies as both a limitation on his freedom of movement, and as constructive custody of state or local law enforcement or correctional officers. We disagree that Defendant was in constructive custody. We understand constructive custody to apply to situations in which a defendant is temporarily outside a penal institution, but is expected to return to the place of confinement. *See* NMSA 1978, § 33–2–44 (1971) (describing standards for participation in inmate release program); NMSA 1978, § 33–2–46 (1980) (defining crime of escape from inmate release program); *see also State v. Pearson,* 2000–NMCA–102, ¶ 7, 129 N.M. 762, 13 P.3d 980 (suggesting that constructive custody includes work-release programs and temporary furlough); *Fellhauer,* 1997–NMCA–064, ¶ 19, 123 N.M. 476, 943 P.2d 123 (rejecting argument that defendant under house arrest is in constructive custody of law enforcement or correctional officers); *State v. Weaver,* 83 N.M. 362, 363, 492 P.2d 144, 145 (Ct.App.1971) (discussing the "constructive confinement" rule which holds a prisoner liable for escape if the prisoner has been given permission to temporarily leave the four walls of the prison and, while outside of the institution, escapes). In this case, although Defendant was being monitored by correctional officers, his place of confinement was his home, not a penal institution. As such, the critical question is whether the condition that Defendant "remain at his home at all times except to attend alcohol counseling, work, or religious services" is a sufficient limitation on Defendant's freedom of movement to entitle him to presentence credit under the first sub-prong of the *Fellhauer* test. We conclude that it is.

**{9}** In *Fellhauer,* we noted that the "conditions included in a release order modeled after Rules 9–302 and 9–303 . . . as they

exist today would normally not be sufficient to earn the credit." 1997–NMCA–064, ¶ 18, 123 N.M. 476, 943 P.2d 123. These rules have not been amended since *Fellhauer* was decided. With respect to limitations on freedom of movement, Rules 9–302 and 9–303 provide the following standard condition: "I will not leave my residence between the hours of ____ (p.m.) and ____ (a.m.) without prior permission of the court[.]" We agree that a curfew, without more, is an insufficient restriction on movement to entitle a defendant to presentence credit. However, house arrest is substantially more onerous than a curfew. In both *Fellhauer* and case at bar, the defendants were not allowed to leave home except for specified events. In addition, Defendant's compliance with the conditions of release were monitored by correctional officers through the electronic monitoring program. *See Fellhauer*, 1997–NMCA–064, ¶ 16, 123 N.M. 476, 943 P.2d 123 (noting that the identity of a custodian is an important factor to consider in determining whether a person is in official confinement). Given this level of monitoring, the conditions of Defendant's house arrest are in many ways similar to the conditions of constructive custody under the inmate release program.

{10} The State argues that Defendant should not receive credit for the time spent in the electronic monitoring program because the other conditions of his release, such as participation in alcohol treatment and submission to random urinalysis, were standard conditions and because house arrest is not an "extraordinary" restraint on an individual's freedom of movement. Nothing in *Fellhauer* supports the State's contention that presentence confinement credit applies only when the limitations on freedom of movement are extraordinary. *See* 1997–NMCA–064, ¶ 17, 123 N.M. 476, 943 P.2d 123 (authorizing confinement credit when a court "impose[s] limitations on the defendant's freedom of movement"). To the contrary, in reviewing out-of-state cases addressing the issue of whether house arrest qualifies as "official confinement," we noted that the primary difference between the cases holding that house arrest qualifies for credit and those holding that it does not qualify was "whether the defendant would be subject to a charge of escape for an unauthorized departure from the place of confinement." *Id.* ¶ 13, 943 P.2d 123. We cited with approval a Maryland case which distinguished cases in which credit for home detention had not been allowed on the ground that " 'where an individual is punishable for escape for any unexcused absence from the place of confinement, his confinement is necessarily involuntary.' " *Id.* (quoting *Dedo v. State*, 343 Md. 2, 680 A.2d 464, 470 (Ct.App.1996)). We note that the conditions of Defendant's release in this case are substantially the same as the conditions imposed on the defendant in *Dedo*, although it appears that the defendant in *Dedo* was not under total house arrest, but was subject to a curfew. *See* 680 A.2d at 469–70 (listing conditions of release as electronic monitoring, site visits by correctional personnel, abstinence from alcohol, and random urinalysis).

{11} As pointed out by Defendant in his reply brief, following the State's argument would require us to hold that time spent in home detention could never qualify for presentence confinement credit. This is clearly contrary to the reasoning of our decision in *Fellhauer*. We hold that any defendant charged with a felony who is released (1) under conditions of house arrest that require the defendant to remain at home except to attend specified events such as treatment, work, or school and (2) pursuant to a community custody release program that holds the defendant liable to a charge of escape under Section 30–22–8.1, is entitled to presentence confinement credit for the time spent in the program.

## CONCLUSION

{12} For the foregoing reasons, we reverse Defendant's sentence and remand with instructions to grant Defendant the credit to which he is entitled.

{13} **IT IS SO ORDERED.**

WE CONCUR: CELIA FOY CASTILLO and IRA ROBINSON, JJ.