2005-NMCA-120

122 P.3d 50

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Valerie A. DUHON, Defendant–Appellant.**

**No. 24,222.**

Court of Appeals of New Mexico.

Aug. 22, 2005.

Certiorari Granted, No. 29,435,
Oct. 13, 2005.

Patricia A. Madrid, Attorney General, Santa Fe, Joel Jacobsen, Assistant Attorney General, Albuquerque, for Appellee.

Liane E. Kerr, Albuquerque, for Appellant.

## OPINION

VIGIL, J.

{1}   Defendant appeals the district court's refusal to grant her presentence confinement credit for the full period of time that she spent under house arrest pursuant to an electronic monitoring program.   We reverse Defendant's sentence and remand with instructions to grant her presentence credit for the full period of time that she spent under house arrest.

## BACKGROUND

{2}   Defendant was charged with committing forgery on February 28, 2001.   On May 9, 2001, she was charged in a homicide/burglary case with being an accessory to second degree murder, burglary, tampering with evidence, and harboring a felon.   The cases were subsequently consolidated.

{3}   On July 11, 2001, Defendant and the State agreed to a "Stipulated Order on Appearance Bond and Conditions of Release" (Stipulated Order) which was approved and adopted as an order of the district court.   It directed that Defendant be released on a $20,000 appearance bond with the following conditions: (1) that she be placed on "strict house arrest"; (2) that she "wear an ankle bracelet provided and monitored twenty-four (24) hours a day"; (3) that she submit to random urinalysis by the adult probation office; (4) that she check in daily with the adult probation office; and (5) that she be allowed to travel while accompanied by her parents only to meet with her attorney, for medical emergencies, to church, and to mental health counseling.   [**Id.**]

{4}   Defendant and the State also negotiated a guilty plea agreement which they filed on July 11, 2001.   The plea agreement required Defendant to cooperate fully with law enforcement in the investigation and subsequent prosecution of all individuals involved in the homicide/burglary.   The guilty plea agreement was subsequently approved by the district court on September 13, 2001. Disposition of Defendant's case was then deferred pending disposition of the homicide/burglary case, and Defendant's house arrest continued under the conditions of release set forth in the Stipulated Order.

{5}   Defendant remained under house arrest pursuant to. the electronic monitoring program as specified in the Stipulated Order from July 12, 2001, until she appeared for final sentencing on May 23, 2003, after the homicide/burglary case was concluded.   Defendant complied with all the conditions of the Stipulated Order and requested presentence confinement credit for the entire time she was under house arrest.   The State objected and a subsequent hearing was held, in which the parties addressed the credit issue. The district court ultimately granted Defendant credit for 340 days, which was only one-

half of the time that she spent under house arrest. Defendant appeals.

## DISCUSSION

### A. *Entitlement to Presentence Confinement Credit*

{6} Defendant is entitled to presentence confinement credit if her house arrest pursuant to the electronic monitoring program constituted "official confinement." NMSA 1978, § 31–20–12 (1977) ("A person held in official confinement on suspicion or charges of the commission of a felony shall, upon conviction of that or a lesser included offense, be given credit for the period spent in presentence of confinement against any sentence finally imposed for that offense."). A two-part test applies, requiring that:

(1) a court has entered an order releasing the defendant from a facility but has imposed limitations on the defendant's freedom of movement, OR the defendant is in the actual or constructive custody or state or local law enforcement or correctional officers; and (2) the defendant is punishable for a crime of escape if there is an unauthorized departure from the place of confinement or other non-compliance with the court's order.

*State v. Fellhauer,* 1997–NMCA–064, ¶ 17, 123 N.M. 476, 943 P.2d 123.

{7} The State concedes that the Stipulated Order setting the conditions of Defendant's release meets the first part of the *Fellhauer* test. We agree. The conditions that she be on "strict house arrest," that she check in daily with the adult probation office, and that she be allowed to travel only to meet with her attorney, for medical emergencies, to church, and to mental health counseling, and then only while accompanied by her parents clearly constitute limitations on her freedom of movement to satisfy the first part of *Fellhauer.* *State v. Guillen,* 2001–NMCA–079, ¶ 11, 130 N.M. 803, 32 P.3d 812 (holding that any defendant charged with a felony who is released "under conditions of house arrest that require the defendant to remain at home except to attend specified events such as treatment, work, or school" places sufficient limitations on that defendant's freedom of movement to satisfy first part of *Fellhauer* test).

{8} The issue presented here is whether Defendant was subject to punishment for a crime of escape under the second part of the *Fellhauer* test. *Guillen* holds that release of a defendant under conditions of house arrest pursuant to a community custody release program that holds the defendant liable to a charge of escape under NMSA 1978, § 30–22–8.1 (1999) satisfies the second prong of *Fellhauer.* *Guillen,* 2001–NMCA–079, ¶¶ 7, 11, 130 N.M. 803, 32 P.3d 812. The dispute in the district court centered on whether Defendant was subject to liability for escape under Section 30–22–8.1. The offense is statutorily defined in Subsection (A) as follows:

Escape from a community custody release program consists of a person, excluding a person on probation or parole, who has been lawfully committed to a judicially approved community custody release program, including a day reporting program, an electronic monitoring program, a day detention program or a community tracking program, escaping or attempting to escape from the community custody release program.

Section 30–22–8.1(A).

{9} The district court focused on whether Defendant's house arrest was pursuant to a "judicially approved community custody release program." The district court stated it was unaware of a "judicially approved community custody release program" in the Ninth Judicial District, and in its letter decision to counsel, the district court stated that the county had not authorized the establishment of a community-release program, citing NMSA 1978, § 33–3–24 (1981) ("The sheriff of any county or the jail administrator of any jail with the approval of the board of county commissioners and the governing body of the municipality, as applicable, may establish a prisoner-release program[.]"). The district court apparently concluded that since Defendant's house arrest was not pursuant to a formally adopted, county-wide, pre-existing uniform system of release, her release was not pursuant to a "judicially approved community custody release program," and Defendant was therefore not subject to liability

under Section 30–22–8.1. Accordingly, Defendant's request for full presentence confinement credit was denied.

{10} We are therefore called upon to interpret Section 30–22–8.1(A) to determine if the district court was correct. Statutory interpretation is an issue of law, which we review de novo. *State v. Rowell*, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995). "Our primary goal in interpreting a statute is to give effect to the Legislature's intent. We look first to the words chosen by the Legislature and the plain meaning of the Legislature's language." *State v. Martinez*, 1998–NMSC–023, ¶ 8, 126 N.M. 39, 966 P.2d 747. When the language in a statute is clear and unambiguous, we give effect to that language and refrain from further statutory interpretation. *State v. Jonathan M.*, 109 N.M. 789, 790, 791 P.2d 64, 65 (1990).

{11} Section 30–22–8.1(A) addresses the escape from a "judicially approved community custody release program." Defendant's release to house arrest was a form of "community custody release" that was "judicially approved." The issue before us is whether that release was pursuant to a "program." Webster's Third New International Dictionary 1812 (unabridged) (2002) defines a "program" in pertinent part as a "plan of procedure," a "schedule or system under which action may be taken toward a desired goal," or "a proposed project or scheme." Concepts considered to be synonymous with a "program" include an "arrangement," an "outline," a "plan," and a "schedule." Burton's Legal Thesaurus 430 (3d ed.1998). Applying the plain meaning rule, while the term "program" suggests that any release will be subject to defined procedures and conditions, it does not require a formally adopted, county-wide, pre-existing, and uniform system of release. Defendant's release here was subject to defined procedures and conditions. To the extent that authorization is at issue, Section 30–22–8.1(A) only requires the release to be "judicially approved," and as we have already noted, Defendant's release was "judicially approved." Nothing about the terminology in the statute suggests that broader approbation of a formalized, universally applicable methodology is contemplated

or required. Therefore, as this case illustrates, the release of a criminal defendant may be "judicially approved" subject to defined procedures and conditions on a case-by-case basis. Finally, we note that while Section 30–22–8.1(A) makes no reference to Section 33–3–24, escape from an "electronic monitoring program" is specifically included. Accordingly, we find nothing in the plain language of the statute to support the meaning ascribed by the district court. "[W]e do not read language into a statute, especially where the statute makes sense as written." *State v. Marshall*, 2004–NMCA–104, ¶ 8, 136 N.M. 240, 96 P.3d 801.

{12} Finally, we consider policy. It seems reasonably clear that Section 30–22–8.1 was designed to create incentives for complying with the conditions of restrictive house arrest, just as the more general escape statutes were designed to create incentives for inmates to remain in jail or the penitentiary. The societal interest in obtaining criminal defendants' compliance with custodial restrictions applies to formalized systems and ad hoc procedures equally. Furthermore, the authorization of court-approved, ad hoc procedures would permit a degree of flexibility that would appear to be desirable in this context. As such, the approach taken by the district court below does not appear to advance the purposes or policies underlying Section 30–22–8.1(A).

{13} In summary, we conclude that Defendant was subject to prosecution for escape under Section 30–22–8.1 throughout the period of time that she remained on house arrest pursuant to the electronic monitoring and reporting program specified in the Stipulated Order. As a consequence, both prongs of the *Fellhauer* test are satisfied, and Defendant is statutorily entitled to receive full presentence confinement credit.

**B.** *The Mandate on Remand*

{14} The parties dispute the scope of the district court's authority on remand. The State contends that the appropriate procedure is an order of "remand for an entirely new sentencing hearing, at which the length of Defendant's sentence would be decided de novo, restricted only by the terms of her plea

agreement." Defendant contends that the inquiry should be limited to recalculation of her presentence confinement credit and application of that credit to her existing sentence. We agree with Defendant.

{15} The district court sentenced Defendant to a total prison term of twelve years and six months but suspended four years and six months, resulting in an eight-year prison sentence, to be followed by supervised probation, then parole. There is no dispute that Defendant's underlying eight-year sentence is valid and within statutory limitations. However, the State contends that the miscalculation of Defendant's presentence confinement credit rendered her entire sentence illegal, such that the sentence as a whole may be reconsidered on remand. Therefore, the State contends, Defendant's underlying eight-year sentence is subject to being increased to twelve years. This argument overlooks the nature of presentence confinement credit.

{16} Statutory presentence confinement credit gives a convicted defendant credit for the period spent in presentence confinement against the sentence finally imposed for that offense. Section 31–20–12. Furthermore, the granting of presentence confinement credit is mandatory. *Id.* (providing that credit *shall* be given for time spent in presentence confinement); *State v. Ramzy*, 98 N.M. 436, 437, 649 P.2d 504, 505 (Ct.App.1982) (observing that Section 31–20–12 is mandatory), *modified on other grounds as recognized by State v. Romero*, 2002–NMCA–106, ¶¶ 7–13, 132 N.M. 745, 55 P.3d 441. The judgment and sentence is therefore subject to correction for inclusion of the mandatory period of presentence confinement credit. *See State v. Abril*, 2003–NMCA–111, ¶ 20, 134 N.M. 326, 76 P.3d 644 ("Where a sentence lacks a statutorily[ ]mandated provision, the trial court retains jurisdiction to correct the sentence *by adding the omitted term.*" (Emphasis added.)); *see, e.g., State v. Aragon*, 109 N.M. 632, 638, 788 P.2d 932, 938 (Ct.App.1990) (holding that the judgment and sentence could properly be amended to add a statutorily mandated restitution requirement); *State v. Acuna*, 103 N.M. 279, 280, 705 P.2d 685, 686 (Ct.App.

1985) (holding that a sentence could properly be amended to include a mandatory parole period). Correcting the judgment and sentence to accurately state the amount of presentence confinement credit Defendant is entitled to receive has no effect on the valid, underlying eight-year sentence. We are aware of no New Mexico case law suggesting that a sentence. which fails to include a mandatory provision, as in this case, is subject to wholesale revision in the manner sought by the State. *See Abril*, 2003–NMCA–111, ¶ 20, 134 N.M. 326, 76 P.3d 644; *cf. State v. Charlton*, 115 N.M. 35, 38, 846 P.2d 341, 344 (Ct.App.1992) ("When a trial court imposes one valid and one invalid sentence, this court will sever the sentences if possible in order to give effect to the valid sentence."). We therefore reject the State's argument that the sentence, as a whole, is illegal and subject to reconsideration.

{17} Furthermore, the constitutional protection against double jeopardy prohibits increasing Defendant's sentence. N.M. Const. art. II, § 15. "It is a well-established principle of New Mexico law that a trial court generally cannot increase a valid sentence once a defendant begins serving that sentence." *State v. Porras*, 1999–NMCA–016, ¶ 7, 126 N.M. 628, 973 P.2d 880. Since Defendant has started to serve her sentence, it can now be increased only if the underlying eight-year sentence itself is invalid. *Id.* Again, the underlying sentence itself is not invalid. While the failure to include the total amount of statutory presentence confinement credit that Defendant is entitled to receive requires correction, this does not render the underlying eight-year sentence itself invalid. *See State v. McDonald*, 113 N.M. 305, 307, 825 P.2d 238, 240 (Ct.App.1991) (stating that a district court's allegedly improper denial of presentence confinement credit did not present a situation in which the sentence imposed was illegal). Given that the underlying eight-year sentence, which Defendant has begun to serve, is not illegal, it cannot now be increased. *See Porras*, 1999–NMCA–016, ¶ 7, 126 N.M. 628, 973 P.2d 880.

{18} The State contends that because Defendant has challenged her sentence, she could not have developed a "reasonable ex-

pectation of finality" in her sentence, and resentencing is permissible. *See State v. Villalobos,* 1998–NMSC–036, ¶ 5, 126 N.M. 255, 968 P.2d 766 (noting the holding of *United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980) that "no reasonable expectation of finality exists in a sentence [for double jeopardy purposes] when Congress has enacted a statute allowing for the possibility the prosecutor could still successfully appeal the sentence"). However, Defendant has never sought to overturn her underlying eight-year sentence. Her challenge has always been limited to the presentence confinement credit issue. We have already concluded that this limited challenge does not undermine the validity of the underlying sentence.

{19} Finally, the State argues that resentencing should be permitted so that the original intent of the sentencing court can be effectuated. In this regard, the district court stated that it "never contemplated, nor approved, the notion that the time [Defendant] spent under house arrest would count as time of incarceration." To the extent that the State relies on the sentencing package doctrine as explained in cases such as *United States v. Hicks,* 146 F.3d 1198, 1202–03 (10th Cir.1998), we point out that, by its terms, the doctrine applies to multiple count cases in which one or more counts are reversed. Here, no count was reversed, and the possibility of this Court's requiring full credit was apparent to the district court at the time it made its ruling. Indeed, if the district court truly intended to require Defendant to serve a particular amount of time, it could have granted the requested presentence confinement credit and lessened the number of years that would be suspended.

## CONCLUSION

{20} We reverse Defendant's sentence and remand with instructions to grant Defendant the total presentence confinement credit to which she is entitled.

{21} **IT IS SO ORDERED.**

BUSTAMANTE, C.J. and PICKARD, J., concur.