**Certiorari Denied, January 7, 2010, No. 32,031**

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2010-NMCA-017**

**Filing Date: September 30, 2009**

**Docket No. 28,289**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellant,**

**v.**

**CLYDE WOODS,**

      **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF SIERRA COUNTY**
**Kevin R. Sweazea, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellant

Gary C. Mitchell, P.C.
Gary C. Mitchell
Ruidoso, NM

for Appellee

## OPINION

**VIGIL, Judge.**

**{1}** The district court sentenced Defendant to house arrest by electronic monitor with global positioning system (GPS) capability and work release at the direction and approval of the Department of Corrections to satisfy the mandatory sentence of imprisonment for one year

1

required by the firearm enhancement statute, NMSA 1978, § 31-18-16(A) (1993). The State appeals, and we affirm.

**BACKGROUND**

{2}     While on duty as a park ranger in Elephant Butte Lake State Park, Defendant fatally shot Victim during a confrontation between Defendant and Victim. Defendant pleaded guilty to voluntary manslaughter, NMSA 1978, Section 30-2-3(A) (1994), a third degree felony resulting in the death of a human being, with a mandatory firearm enhancement under Section 31-18-16(A). NMSA 1978, Section 31-18-15(A)(7) (2007) provides that the basic sentence for a third degree felony resulting in the death of a human being is "six years imprisonment." The firearm enhancement statute at Section 31-18-16(A) provides:

> When a separate finding of fact by the court or jury shows that a firearm was used in the commission of a noncapital felony, the basic sentence of imprisonment prescribed for the offense in Section 31-18-15 NMSA 1978 shall be increased by one year, and the sentence imposed by this subsection shall be the first year served and shall not be suspended or deferred; provided, that when the offender is a serious youthful offender or a youthful offender, the sentence imposed by this subsection may be increased by one year.

{3}     At Defendant's sentencing hearing, much information was presented to the district court on Defendant's behalf. Defendant presented a clinical psychologist as an expert witness who testified that Defendant was not a danger to himself or the community so long as he was not involved in law enforcement. Various family members, members of the community, including law enforcement, friends and coworkers also spoke on behalf of Defendant about his background, contributions to the community, his law enforcement work, and the circumstances of the offense. Defendant also spoke and apologized to Victim's family. Finally, the district court was provided with a pre-sentence report prepared by Department of Corrections and argument of counsel. Defense counsel asked the district court to allow Defendant to serve the mandatory one-year sentence on an ankle bracelet, and the prosecutor asked for prison time, arguing that the firearm enhancement statute required incarceration because "prison means prison."

{4}     The district court judge heard and considered all the information presented, including the circumstances of the offense. The district court judge concluded, "I believe it's the [c]ourt's power in the circumstance to order that the mandatory one year be served ankle bracelet, electronic monitoring, GPS monitoring, house arrest, except for work and except for community service." In pertinent part, the judgment and partially suspended sentence provides:

> **IT IS THE SENTENCE OF THE COURT** that . . . Defendant be incarcerated in the New Mexico Department of Corrections for a period of 6 years as to Count I and that the sentence be enhanced by one (1) year for the

2

mandatory firearm enhancement, pursuant to §31-18-16 for a total sentence of seven (7) years.

**IT IS FURTHER SENTENCE OF THE COURT** that all but the firearm enhancement be suspended for a total period of incarceration of one (1) year which [D]efendant shall serve under house arrest by electronic monitor with GPS capability at the cost and expense of [D]efendant, with work release authorized and that . . . Defendant shall perform 120 hours of community service yearly during this period of house arrest which community service shall be at the direction and approval of the Department of Corrections.

**IT IS THE FURTHER SENTENCE OF THE COURT** that following the one (1) year mandatory incarceration that [D]efendant be placed on supervised probation for a period of five (5) years.

The State appeals.

## DISCUSSION

**{5}** The issue presented by this appeal is whether the mandatory one-year sentence set forth in Section 31-18-16(A) may be served under house arrest with electronic monitoring by the Department of Corrections. Statutory interpretation is an issue of law, which we review de novo. Our primary goal in interpreting a statute is to give effect to the Legislature's intent. We look first to the words chosen by the Legislature and the plain meaning of the Legislature's language. "When the language in a statute is clear and unambiguous, we give effect to that language and refrain from further statutory interpretation." *State v. Duhon*, 2005-NMCA-120, ¶ 10, 138 N.M. 466, 122 P.3d 50. Two sources we may utilize to aid in our interpretation of a statute, other than the language of the statute itself, are other statutes containing similar language and case law applying the statute. *State v. Fellhauer*, 1997-NMCA-064, ¶ 5, 123 N.M. 476, 943 P.2d 123.

## 1. Statutory Designation of the Place of Imprisonment

**{6}** The State argues that under NMSA 1978, Section 31-20-2(A) (1993), and NMSA 1978, Section 33-2-19 (1990), the only correct place of imprisonment for a term of one year or more is the State Penitentiary. We disagree.

**{7}** Section 31-20-2(A) in its entirety states:

Persons sentenced to imprisonment for a term of one year or more shall be imprisoned in a corrections facility designated by the corrections department, unless a new trial is granted or a portion of the sentence is suspended so as to provide for imprisonment for not more than eighteen months; then the

3

imprisonment may be in such place of incarceration, other than a corrections facility under the jurisdiction of the corrections department, as the sentencing judge, in his discretion, may prescribe; provided that a sentence of imprisonment for one year or more but not more than eighteen months shall be subject to the provisions of Subsections D and E of this section and shall not be imposed unless the requirements set forth in Subsection D of this section are satisfied.

**{8}** Pertinent to the issue in this case, one exception to the general requirement that a person sentenced to imprisonment for a term of one year or more "shall be imprisoned in a corrections facility designated by the corrections department" is when "a portion of the sentence is suspended so as to provide for imprisonment for not more than eighteen months." *Id.* In this case, the exception applies because a portion of Defendant's sentence was suspended, and a total period of incarceration of one year was imposed. Since the exception applies, "the imprisonment may be in such place of incarceration, other than a corrections facility under the jurisdiction of the corrections department, as the sentencing judge, in his discretion, may prescribe." The last phrase of the statute does not apply here. It references Subsections (D) and (E), known as the local sentencing option, and they apply if the sentencing judge designates the place of incarceration as one which is operated by a local governing body such as a city or county.

**{9}** In a similar vein, Section 33-2-19 in pertinent part states:

All persons convicted of any crime where the punishment is imprisonment for a term of one year or more, after accounting for any period of the sentence being suspended or deferred and any credit for presentence confinement, shall be imprisoned in a corrections facility, unless otherwise provided by law, and judgments shall be issued accordingly.

**{10}** The question presented in this case is whether the district court had legal authority to sentence Defendant to the Department of Corrections and serve the mandatory one-year period of incarceration under house arrest by electronic monitor with GPS capability at the cost and expense of Defendant. If the district court had the authority to do so, Sections 31-20-2(A) and 33-2-19 are not violated. We now turn to the central question raised in this case.

**2. Imprisonment Through House Arrest by Electronic Monitor**

**{11}** The issue of whether a mandatory sentence of imprisonment may be served under house arrest by an electronic monitor with GPS capability is an issue of first impression. However, our existing statutory framework and precedent provide us with considerable guidance in resolving the question before us in this case.

**{12}** Since 1963, the Legislature has included the concept of custody outside the four walls of a penal institution in the Criminal Code definition of "lawful custody or confinement." Specifically, NMSA 1978, Section 30-1-12(H) (1963) defines "lawful custody or confinement"

4

to mean, "the holding of any person pursuant to lawful authority, including, without limitation, actual or conservtive [constructive] custody of prisoners temporarily outside a penal institution, reformatory, jail, prison farm or ranch[.]" Thus, the use of a conventional jail to hold the person is not necessary for there to be a "lawful custody or confinement" under the plain language of the statute. A "lawful custody or confinement" simply consists of "the holding of any person pursuant to lawful authority," and the actual means used to accomplish holding the person is "without limitation." *Id.*

{13}     We applied the foregoing concepts in *Fellhauer*, 1997-NMCA-064, ¶ 5, when we considered whether the pretrial release of a defendant to the custody of a relative with house arrest constitutes "official confinement" to warrant presentence confinement credit under NMSA 1978, Section 31-20-12 (1977), which directs:

> A person held in official confinement on suspicion or charges of the commission of a felony shall, upon conviction of that or a lesser included offense, be given credit for the period spent in presentence confinement against any sentence finally imposed for that offense.

We recognized that while the terms used in the two statutes ("lawful custody or confinement" and "official confinement") are not identical, it is reasonable to treat them as "closely related, if not functionally equivalent, concepts." *Fellhauer*, 1997-NMCA-064, ¶ 6. Furthermore, we concluded, since the statutory definition of "lawful custody or confinement" includes constructive custody outside a penal institution, reformatory, or jail, "a person can be in confinement outside the four walls of a prison or jail or other institution in which inmates are controlled by the police or other correctional officials." *Id.* We then referred to other cases interpreting presentence confinement credit under Section 31-20-12, and noted, "our cases teach that under the statute actual jail time is not required to earn the [presentence confinement] credit." *Fellhauer*, 1997-NMCA-064, ¶ 7. However, we also concluded that the constructive custody must be sufficiently restrictive or onerous to be considered as confinement, and home confinement, by itself, is neither sufficiently restrictive nor onerous. *Id.* ¶¶ 10-13.

{14}     Finally, we concluded that whether an individual can be punished for escape for an unexcused absence from the place of confinement, *id.* ¶¶ 12-13, and the identity of the custodian are appropriate considerations bearing on whether an individual is in "official confinement" to be entitled to presentence confinement credit under Section 31-20-12. *Fellhauer*, 1997-NMCA-064, ¶¶ 16-17.

{15}     Applying the language of the statutes, precedent, and the foregoing factors, *Fellhauer* held:

> Section 31-20-12 applies to time spent outside a jail, prison or other adult or juvenile correctional facility when (1) a court has entered an order releasing the defendant from a facility but has imposed limitations on the defendant's freedom of movement, OR the defendant is in the actual or constructive custody of state

5

or local law enforcement or correctional officers; and (2) the defendant is punishable for a crime of escape if there is an unauthorized departure from the place of confinement or other non-compliance with the court's order.

*Fellhauer*, 1997-NMCA-064, ¶ 17.

**{16}**     The defendant in *Fellhauer* was not in the actual or constructive custody of law enforcement or correctional officers because he was released to the care of a relative, and he was not subject to a charge of escape if he failed to abide by the terms of his house arrest. *Id.* ¶ 19. Accordingly, the defendant's house arrest did not qualify as "official confinement" under Section 31-20-12. *Fellhauer*, 1997-NMCA-064, ¶ 20.

**{17}**     In *State v. Martinez*, 1998-NMSC-023, ¶ 10, 126 N.M. 39, 966 P.2d 747, our Supreme Court noted that fourth and subsequent convictions for driving while intoxicated (DWI) constitute fourth degree felonies, and added that under Section 31-20-12, the Legislature has directed that credit must be awarded against any sentence finally imposed for the time a defendant is held in official confinement on suspicion or charge of a felony offense. *Martinez*, 1998-NMSC-023, ¶ 10. Therefore, our Supreme Court presumed, "based on Section 31-20-12 and the Legislature's use of the word 'felony' in Section 66-8-102, that the Legislature intended to require that trial courts grant presentence credit, for official confinement, to defendants convicted of a fourth or subsequent offense of DWI." *Martinez*, 1998-NMSC-023, ¶ 10.

**{18}**     We then considered the foregoing statutes and cases in the context of the mandatory sentence for a fourth DWI conviction in *State v. Guillen*, 2001-NMCA-079, 130 N.M. 803, 32 P.3d 812. In *Guillen*, the defendant was released from jail on the condition that he participate in an electronic monitoring program, together with other special conditions that included that he "remain at his home at all times except to attend alcohol counseling, work, or religious services." *Id.* ¶¶ 2, 8. The defendant successfully participated in the electronic monitoring program and alcohol treatment for seven and one-half months and then entered a guilty plea to felony DWI (fourth offense). *Id.* ¶ 4. At sentencing, the defendant asked the district court to award him presentence confinement credit for the time he was released on electronic monitoring. *Id.* However, because of mandatory sentencing for a fourth offense felony DWI, the district court ruled that it lacked the authority to grant presentence confinement credit. *Id.* ¶ 1. *See* NMSA 1978, § 66-8-102(G) (2008) (stating that a fourth DWI conviction constitutes a fourth degree felony, and "notwithstanding the provisions of Section 31-18-15 NMSA 1978, [an offender] shall be sentenced to a term of imprisonment of eighteen months, six months of which shall not be suspended, deferred or taken under advisement"). The defendant appealed. The defendant had been monitored by correctional officers, and his place of confinement was his home, not a penal institution. *Guillen*, 2001-NMCA-079, ¶ 8. We concluded that under the first part of the *Fellhauer* test, the critical question before us was whether participation in the electronic monitoring program coupled with the special conditions constituted a sufficient limitation on the defendant's freedom of movement to entitle him to presentence confinement credit under Section 30-1-12. *Guillen*, 2001-NMCA-079, ¶ 8. We concluded they were sufficient, and the first prong of *Fellhauer* was satisfied. *Guillen*, 2001-NMCA-079, ¶¶ 9-10.

6

The State conceded that the electronic monitoring program satisfied the second prong of the *Fellhauer* test. *Guillen*, 2001-NMCA-079, ¶ 7. We therefore held:

> [A]ny defendant charged with a felony who is released (1) under conditions of house arrest that require the defendant to remain at home except to attend specified events such as treatment, work, or school and (2) pursuant to a community custody release program that holds the defendant liable to a charge of escape under Section 30-22-8.1, is entitled to presentence confinement credit for the time spent in the program.

*Guillen*, 2001-NMCA-079, ¶ 11. We reversed the defendant's sentence and remanded the case to the district court with instructions to grant to the defendant the presentence credit he was entitled to receive. *Id.* ¶ 12.

{19} In *Duhon*, the defendant was released pending trial on a $20,000 appearance bond with the additional conditions: "(1) that she be placed on strict house arrest; (2) that she wear an ankle bracelet provided and monitored twenty-four (24) hours a day; (3) that she submit to random urinalysis by the adult probation office; (4) that she check in daily with the adult probation office; and (5) that she be allowed to travel while accompanied by her parents only to meet with her attorney, for medical emergencies, to church, and to mental health counseling." 2005-NMCA-120, ¶ 3 (internal quotation marks omitted). The State conceded that these conditions of release satisfied the first *Fellhauer* prong. *Duhon*, 2005-NMCA-120, ¶ 7. The issue on appeal was whether the defendant was subject to punishment for a crime of escape under the second prong of *Fellhauer*. *Duhon*, 2005-NMCA-120, ¶ 8. We concluded that the defendant was subject to prosecution for escape from a community custody release program under NMSA 1978, Section 30-22-8.1(A) (1999). *Duhon*, 2005-NMCA-120, ¶ 11. This statute provides:

> Escape from a community custody release program consists of a person, excluding a person on probation or parole, who has been lawfully committed to a judicially approved community custody release program, including a day reporting program, an electronic monitoring program, a day detention program or a community tracking program, escaping or attempting to escape from the community custody release program.

Section 30-22-8.1(A).

{20} The defendant was subject to prosecution under the statute because her release to house arrest constituted a "judicially approved" form of "community custody release" that was subject to defined procedures and conditions established by the court. *Duhon*, 2005-NMCA-120, ¶ 11 (internal quotation marks omitted). Furthermore, we noted, an "electronic monitoring program" is specifically included as one type of a community custody program in the statute. *Id.* We therefore concluded that the second prong of *Fellhauer* was satisfied, and the defendant was entitled to presentence confinement credit for the entire time she was under house arrest pursuant

7

to the electronic monitoring and reporting program requirements of her pretrial release. *Duhon*, 2005-NMCA-120, ¶ 13.

**{21}** Finally, *State v. Frost*, 2003-NMCA-002, 133 N.M. 45, 60 P.3d 492, specifically considered whether, in light of *Guillen*, *Martinez*, and *Fellhauer*, the mandatory jail term of six months required by Section 66-8-102(G) (prior to 2004 amendment) for a fourth or subsequent DWI conviction may be served in an electronic monitoring program administered by a county detention center. *Frost*, 2003-NMCA-002, ¶¶ 1, 12-13. The statute at issue in *Frost* stated:

> Upon a fourth or subsequent conviction [for DWI] under this section, an offender is guilty of a fourth degree felony, as provided in Section 31-18-15 NMSA 1978, and shall be sentenced to a jail term of not less than six months, which shall not be suspended or deferred or taken under advisement.

*Id.* ¶ 5 (emphasis omitted) (internal quotation marks and citation omitted). We followed *Guillen*, *Martinez*, and *Fellhauer* and held that time served in the county jail administered electronic monitoring program "falls within the scope of what the [L]egislature has intended by requiring a mandatory six-month 'jail term' imposed by Section 66-8-102(G)." *Frost*, 2003-NMCA-002, ¶ 20. Since presentence confinement in an electronic monitoring program qualifies under Section 31-20-12 for credit toward the mandatory six-month jail term imposed by Section 66-8-102(G), it follows that postsentence confinement in the same electronic monitoring program can be credited toward the same mandatory jail term for repeat DWI offenders.

**{22}** A defendant is also entitled to postconviction credit for time spent in confinement pending appeal under NMSA 1978, Section 31-20-11 (1977), which provides:

> A person convicted of a felony in the district court and held in official confinement while awaiting the outcome of an appeal, writ of error to, or writ of certiorari from, a state or federal appellate court or prior to his release as a result of postconviction proceedings or habeas corpus, shall be given credit for the period spent in confinement against any sentence finally imposed for that offense.

This statute also uses the phrase "official confinement" to describe what is required to entitle a defendant to postconviction confinement credit. Noting that the phrase used to describe the entitlement to presentence confinement credit and the entitlement to postconviction confinement credit are identical, we concluded in *Frost* that post-sentence confinement under a county jail administered electronic monitoring program may be credited toward the mandatory sixth-month jail term. *Frost*, 2003-NMCA-002, ¶ 12.

**{23}** The existing statutory framework and precedent thus compels us to conclude that there is no prohibition against serving a mandatory sentence of imprisonment under house arrest by an electronic monitor. In fact, we would have to reverse a substantial body of precedent to come to a different conclusion.

8

### 3.  Public Policy

**{24}**  The State argues that the legislative intent of the firearm enhancement statue is to impose a one-year term of actual incarceration in a prison or jail following a conviction for the purpose of deterring the use of firearms in crimes.  The State asserts that allowing house arrest by an electronic monitor contravenes this public policy established by the Legislature.  Again, we disagree.

**{25}**  First, the Legislature requires that a defendant receive presentence confinement credit against any sentence that is ultimately imposed.  Our cases hold that the credit may be earned under house arrest with an electronic monitor because such conditions constitute official confinement.  It is not inconceivable for a defendant to be on pretrial release under these conditions for one year or more and thereby satisfy the mandatory one-year sentence of Section 31-18-16(A).  For example, the defendant in *Duhon* was on pretrial release with a condition of "strict house arrest" with an electronic monitor for over twenty months.  *Duhon*, 2005-NMCA-120, ¶¶ 3, 5.

**{26}**  Second, following conviction, a defendant is entitled to credit for any time served in official confinement while awaiting the outcome of his appeal.  Our case law concludes that house arrest with an electronic monitor constitutes such official confinement for the entitlement.  If a defendant is allowed release pending appeal under house arrest with an electronic monitor, and the appeal takes one year or more to be resolved, the mandatory one-year sentence of Section 31-18-16(A) will have been served at the conclusion of the appeal.

**{27}**  Third, the Legislature has not altered the existing judicial construction of its mandatory imprisonment statutes.  For example, in 2004, the Legislature amended Section 66-8-102(G).  As amended in 2004, Section 66-8-102(G) now states:

> Upon a fourth conviction pursuant to this section, an offender is guilty of a fourth degree felony and, notwithstanding the provisions of Section 31-18-15 NMSA 1978, shall be sentenced to a term of imprisonment of eighteen months, six months of which shall not be suspended, deferred or taken under advisement.

2004 N.M. Laws, ch. 42, § 1.  The Legislature then added Subsections (H) to (J) to Section 66-8-102, relating, respectively, to fifth, sixth, and seventh DWI convictions.  2004 N.M. Laws, ch. 42, § 1.  In language identical to Subsection (G) as amended, the new sections prescribe that a fifth DWI conviction constitutes a fourth degree felony, with a mandatory sentence of one year, "which shall not be suspended, deferred or taken under advisement"; a sixth DWI conviction constitutes a third degree felony, with a mandatory sentence of eighteen months, "which shall not be suspended, deferred or taken under advisement"; and a seventh or subsequent DWI conviction constitutes a third degree felony, with a mandatory sentence of two years, "which shall not be suspended, deferred or taken under advisement."  Section 66-8-102(H)-(J).  We deem it highly significant that these amendments did not alter *Guillen*, *Martinez*, and *Fellhauer*,

9

and our holding in *Frost* was left intact. We fully acknowledge that the Legislature may require a sentence to be served in a traditional prison setting. However, it has not done so.

**{28}** Fourth, we note that a defendant is not *entitled* to electronic monitoring. In fact, in the context of pretrial release under electronic monitoring, in *Duhon* we specifically said that "the release of a criminal defendant may be 'judicially approved' subject to defined procedures and conditions on a case-by-case basis." *Duhon*, 2005-NMCA-120, ¶ 11. We added that "[t]he societal interest in obtaining criminal defendants' compliance with custodial restrictions applies to formalized systems and ad hoc procedures equally. Furthermore, the authorization of court-approved, ad hoc procedures would permit a degree of flexibility that would appear to be desirable in this context." *Id.* ¶ 12. Our existing sentencing scheme therefore provides sentencing courts the discretion, on a case-by-case basis, to impose appropriate restrictions coupled with house arrest and electronic monitoring to satisfy a mandatory sentence. Societal protection does not require, in all cases, that prison sentences be served within the confines of a traditional prison setting. Having heard all the evidence concerning the circumstances of the offense, and having been provided with information pertinent to the sentencing decision from or on behalf of the victim, the victim's family, the defendant, the impact of the crime on the community, the public safety, the goals of punishment, retribution and rehabilitation, our trial courts are well equipped and suited to determine, in their discretion, when the exception to a traditional prison sentence is appropriate.

**{29}** We therefore conclude that public policy does not prohibit the mandatory firearm enhancement of a one-year sentence of imprisonment set forth in Section 31-18-16(A) from being served under house arrest with electronic monitoring.

**CONCLUSION**

**{30}** We hold that the mandatory one-year prison term required by Section 31-18-16(A) of our firearm enhancement statute may be served under house arrest by an electronic monitor under the supervision of state or local law enforcement or correctional officers if the defendant is subject to being punished for a crime of escape for an unauthorized departure from the place of confinement or other non-compliance with the sentencing court's order.

**{31}** The judgment and sentence of the district court is affirmed.

**{32}** **IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Chief Judge**

10

_____
**LINDA M. VANZI, Judge**


**Topic Index for** *State v. Woods***, No. 28,289**

| **CL** | **CRIMINAL LAW** |
|---|---|
| CL-VM | Voluntary Manslaughter |

| **CA** | **CRIMINAL PROCEDURE** |
|---|---|
| CA-CR | Conditions of Probation |
| CA-FE | Firearm Enhancement |
| CA-GP | Guilty Plea |
| CA-JS | Judgment and Sentence |
| CA-MS | Mandatory Sentence |
| CA-PL | Parole |
| CA-PO | Peace Officer |
| CA-PP | Plea and Plea Bargaining |
| CA-PB | Probation |

| **ST** | **STATUTES** |
|---|---|
| ST-IP | Interpretation |