This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-39763

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**CANDIDO ANDAZOLA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Jane Shuler Gray, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Michael J. Thomas, Assistant Attorney General
Albuquerque, NM

for Appellee

Harrison, Hart & Davis, LLC
Nicholas T. Hart
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}** Defendant Candido Andazola appeals his convictions for five charges: two counts of aggravated assault on a peace officer, contrary to NMSA 1978, Section 30-22-22(A) (1971); one count of aggravated assault, contrary to NMSA 1978, Section 30-3-2(A) (1963); one count of shooting at a dwelling or occupied building, contrary to NMSA 1978, Section 30-3-8(A) (1993); and one count of shooting at or from a motor vehicle, contrary to Section 30-3-8(B). Defendant argues that (1) the evidence produced

at trial was insufficient to convict him of aggravated assault on a peace officer under an attempted battery theory; (2) the district court improperly denied Defendant's request for presentence confinement credit for the time he spent on GPS location monitoring; and (3) Defendant's two convictions under Section 30-3-8(A) and (B) violate double jeopardy. We affirm.

**FACTUAL BACKGROUND**

**{2}** At trial, the State produced the following evidence leading to Defendant's conviction: two City of Roswell police officers and a civilian on a ride along were ordering food at Whataburger around 2:00 a.m. when they observed Defendant and his cousin walk in and order. Defendant and his cousin then left the restaurant with their food, and the officers and civilian sat at a table near a window. Shortly thereafter, a loud noise was heard outside and the officers were hit with pieces of glass from the window shattering. Along with having heard the sound of the shattered window, the civilian testified that she heard a gunshot. From the floor of the restaurant, where they had sought safety, the officers called dispatch for assistance.

**{3}** A few minutes later, Defendant and his cousin stepped out of a pickup truck parked immediately outside the restaurant window and ran into the restaurant, yelling incomprehensibly. Both were detained and Defendant was handcuffed. At trial, Defendant testified that he was unloading the gun when it discharged in his hand on accident, firing two shots "simultaneously." Realizing the gravity of what had happened, Defendant told his cousin that they should "make up the story" that someone was shooting at them in the parking lot. Defendant explained at trial that he went inside the restaurant with his hands up in order to relay that narrative to the police.

**{4}** As Defendant was being taken to a police vehicle, one of the officers noticed quantities of saliva and soda splattered on the exterior of his vehicle and on the ground nearby. A DNA comparison later revealed the presence of Defendant's DNA in the sample taken from the saliva on the police vehicle. Defendant testified that he did not know how his spit got on the patrol vehicle.

**{5}** Exterior surveillance footage from the restaurant showed the truck parked immediately outside the restaurant window, its front windshield break, followed by a puff of smoke. Subsequent inspection of the truck showed bullet holes through the front windshield, as well as the rear window of the passenger cab. A detective inspecting the truck determined that the bullets traveled in opposite directions from the inside of Defendant's truck because glass shards were found on both the hood and in the bed of the truck. Two bullet casings were found inside the truck cabin.

**DISCUSSION**

**Substantial Evidence**

**{6}** Defendant argues that the jury was presented with insufficient evidence to convict him of two counts of aggravated assault on a peace officer under an attempted battery theory. Defendant maintains that while he discharged the firearm recklessly, no evidence indicates that he fired with sufficient intent to commit a battery by intentionally firing towards the officers.

**{7}** "When reviewing a challenge to the sufficiency of the evidence, we determine whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Uribe-Vidal*, 2018-NMCA-008, ¶ 6, 409 P.3d 992 (internal quotation marks and citation omitted). "In reviewing whether there was sufficient evidence to support a conviction, we resolve all disputed facts in favor of the state, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *State v. Zachariah G.*, 2021-NMCA-036, ¶ 8, 495 P.3d 537 (alteration, internal quotation marks, and citation omitted). "Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. "Just because the evidence supporting the conviction was circumstantial does not mean it was not substantial evidence." *Id.* ¶ 23 (internal quotation marks and citation omitted).

**{8}** The district court instructed the jury that to find aggravated assault on a peace officer by use of a deadly weapon, the State had to prove beyond a reasonable doubt that (1) Defendant intended to commit the crime of battery against the two officers by shooting a firearm in their direction; (2) Defendant began to do an act which constituted a substantial part of the battery but failed to commit the battery; (3) Defendant used a firearm; (4) the officers were peace officers performing their duties as such; (5) Defendant knew they were peace officers; (6) Defendant's conduct threatened the safety of the officers; and (7) it happened in Chaves County, New Mexico. *See* UJI 14-2201 NMRA; *see also State v. Garcia*, 2009-NMCA-107, ¶ 21, 147 N.M. 150, 217 P.3d 1048 ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." (internal quotation marks and citation omitted)).

**{9}** Defendant's argument regarding sufficiency of the evidence is that at best the record demonstrates the discharge of his firearm was reckless and not purposeful, which would negate the intent requirement for battery. The State answers that Defendant overlooks additional facts from which the jury could have determined Defendant intended to shoot his weapon at the officers' location in the restaurant. More specifically, the State asserts that Defendant's saliva found on one of the officer's vehicles suggests Defendant's hostility toward the officers to a degree that, coupled with the fact that the bullet struck a window near where the officers and civilian were seated, circumstantially demonstrates Defendant's intent. As well, a quantity of soda was splashed onto the police vehicle while it was parked outside the restaurant. Defendant testified that he had previously, unsuccessfully, applied to work at the Roswell Police Department. Defendant testified that he was proficient with firearms, calling into question the accidental discharge of his personal weapon twice in different directions.

These facts presented to the jury can be viewed to demonstrate a collective intent to harm the officers as well as that it was unlikely, as the jury determined, that the gun discharged accidentally—recklessly or otherwise—while pointed at police officers, and then again in the opposite direction, outwardly shattering the front and back windows of Defendant's truck. We will not reweigh evidence when the jury has already been presented with two hypotheses and identified through the verdict which is the more reasonable of the two. *See State v. Montoya*, 2005-NMCA-078, ¶ 3, 137 N.M. 713, 114 P.3d 393. The other elements of the jury instructions were satisfied as Defendant testified that the firearm discharged in his hand, and Defendant would have known the officers were acting as peace officers in the discharge of their duties because they were wearing their uniforms and had conspicuously parked their marked patrol vehicles in the parking lot. We therefore hold that sufficient evidence supported a finding of Defendant's requisite mens rea for this conviction.

**Presentence Confinement**

**{10}**    Defendant argues that the district court erred at sentencing by denying him presentence confinement credit for the period of time that he was required to wear a GPS monitoring device prior to conviction. Defendant contends that the imposition of GPS location monitoring—in conjunction with a curfew between the hours of 8:00 p.m. and 6:00 a.m. and a travel restriction limited to Chaves County—deprived him of his freedom of movement such that he should be awarded presentence confinement credit. The State argues that Defendant's GPS location monitoring did not establish a restrictive condition "approaching those experienced by people who are incarcerated," *State v. Figueroa*, 2020-NMCA-007, ¶ 30, 457 P.3d 983 (emphasis omitted), as Defendant was only confined to Chaves County during the day and to his home during conventional curfew hours. Indeed, the district court later issued a stipulated order modifying Defendant's conditions of release, which permitted him to be anywhere within the state for work purposes outside of curfew hours. "Because we must interpret [NMSA 1978,] Section 31-20-12 [(1970)] to determine whether [the d]efendant qualifies for presentence confinement credit, our review of the district court's calculation of credit is de novo." *Figueroa*, 2020-NMCA-007, ¶ 23.

**{11}**    Section 31-20-12 provides that "[a] person held in official confinement on suspicion or charges of the commission of a felony shall, upon conviction of that or a lesser included offense, be given credit for the period spent in presentence confinement against any sentence finally imposed for that offense." We have interpreted "official confinement" under the statute as the following:

> Section 31-20-12 applies to time spent outside a jail, prison or other adult or juvenile correctional facility when (1) a court has entered an order releasing the defendant from a facility but has imposed limitations on the defendant's freedom of movement, OR the defendant is in the actual or constructive custody of state or local law enforcement or correctional officers; and (2) the defendant is punishable for a crime of escape if there

is an unauthorized departure from the place of confinement or other non[]compliance with the court's order.

*State v. Fellhauer*, 1997-NMCA-064, ¶ 17, 123 N.M. 476, 943 P.2d 123. Since *Fellhauer*, we have observed that house arrest constitutes a limitation on a defendant's freedom of movement, but a "conventional curfew" does not. *State v. Hansen*, 2021-NMCA-048, ¶ 21, 495 P.3d 1173 (internal quotation marks and citation omitted); *State v. Guillen*, 2001-NMCA-079, ¶ 11, 130 N.M. 803, 32 P.3d 812.

**{12}**    Although we recognize that GPS location monitoring imposes additional surveillance on Defendant during noncurfew hours, we are unpersuaded that such limits his freedom of movement to a degree that equates with house arrest such that he is entitled to presentence confinement credit under Section 31-20-12. Despite his location being available to law enforcement, Defendant was still "answerable to no one for his whereabouts" during noncurfew hours. *Figueroa*, 2020-NMCA-007, ¶ 31. Defendant was permitted to freely leave his home between 6:00 a.m. and 8:00 p.m. unsupervised by any custodian. *See id.* Moreover, Defendant does not allege that he was subject to potentially "arbitrary" discretion exercised by the pretrial services office that might warrant additional scrutiny as to its effect on his ability to move freely about the county, and eventually the State, during the day. *See Hansen*, 2021-NMCA-048, ¶ 26. Considered in sum, the conditions of which Defendant was subject to do not amount to official confinement under the applicable statute or jurisprudence. Therefore, we affirm the district court's rejection of Defendant's request for presentence confinement credit.

**Double Jeopardy**

**{13}**    Defendant argues that his convictions for shooting at a dwelling or occupied building, Section 30-3-8(A), and shooting at or from a motor vehicle, Section 30-3-8(B), violate double jeopardy because this case comprised only the "accidental misfiring of a single bullet." The State argues that *two* shots, fired through the truck's front windshield then the back window, constitute two different actions that are not unitary conduct. In response, Defendant contends that even if two shots occurred, they comprised unitary conduct such that he is being punished twice for the same underlying action.

**{14}**    We apply a de novo standard of review of whether there has been a double jeopardy violation. *State v. Andazola*, 2003-NMCA-146, ¶ 14, 134 N.M. 710, 82 P.3d 77. "However, where factual issues are intertwined with the double jeopardy analysis, we review the trial court's fact determinations under a deferential substantial evidence standard of review." *State v. Rodriguez*, 2006-NMSC-018, ¶ 3, 139 N.M. 450, 134 P.3d 737.

**{15}**    For the double jeopardy clause to prohibit multiple punishments under different statutes for the same underlying conduct, the conduct must be unitary and the legislature must not have intended to create separately punishable offenses. *State v. Begaye*, 2023-NMSC-015, ¶ 13, 533 P.3d 1057; *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223. "When determining whether [the d]efendant's conduct

was unitary, we consider whether [the d]efendant's acts are separated by sufficient indicia of distinctness." *State v. DeGraff*, 2006-NMSC-011, ¶ 27, 139 N.M. 211, 131 P.3d 61 (internal quotation marks and citation omitted). "Conduct is unitary when not sufficiently separated by time or place, and the object and result or quality and nature of the acts cannot be distinguished." *State v. Silvas*, 2015-NMSC-006, ¶ 10, 343 P.3d 616. "Distinctness may also be established by the existence of an intervening event, the defendant's intent as evinced by his or her conduct and utterances, the number of victims, and the behavior of the defendant between acts." *State v. Barrera*, 2001-NMSC-014, ¶ 36, 130 N.M. 227, 22 P.3d 1177 (internal quotation marks and citation omitted).

**{16}** In this case, Defendant's argument rests on the theory that there was only a single, accidental misfire. The State is correct, however, that the jury was presented with evidence that two shots—in different directions from the same location—were fired by Defendant from the cab of his truck. One was through the windshield of the truck and directed toward the restaurant, and the other was out the back window of the truck. The fact that the shots were fired in opposite directions suggests that the conduct was not unitary here. As discussed, the jury could reasonably have inferred that Defendant intended to shoot at the officers in the restaurant. The fact that the second shot was fired in the opposite direction indicates that Defendant had a different objective and intent in discharging his firearm the second time. At trial, Defendant admitted that immediately after the shooting he suggested lying to the police that he and his cousin were being shot at. From this, the jury could have inferred that Defendant fired once into the fast food restaurant, decided he needed an alibi, then fired the gun through the back window to fabricate evidence of being shot at. Although the two shots would have been close in time and space, the intention of creating an alibi only for the second shot—a shot that required some passage of time and movement by Defendant given the barrel of his gun was turned in a 180-degree direction—is a sufficiently distinct quality. *See Silvas*, 2015-NMSC-006, ¶ 10. As the facts indicate an identifiable point where one crime had been completed and the other not yet committed, we hold that the two bullets fired did not constitute unitary conduct. *See Begaye*, 2023-NMSC-015, ¶ 13.

**{17}** The jury was free to reject Defendant's version of events that suggested the gun accidently discharged, twice, simultaneously and in opposite directions, and we will not substitute our judgment for that of the finder of fact. *See Rodriguez*, 2006-NMSC-018, ¶ 3. That some victims did not hear a second gunshot—or even the first for one victim— does not undermine the evidence produced from which the jury could infer that there were two distinct instances of gunfire chargeable under different offenses. Indeed, two bullet casings were found on the floor of the truck cab. As this conduct is not unitary, we need not evaluate whether the Legislature intended to create separately punishable offenses. *See State v. Torres*, 2018-NMSC-013, ¶ 21, 413 P.3d 467 ("When unitary conduct is the basis for multiple convictions, we must attempt to determine whether the Legislature intended to punish the crimes separately." (alterations, internal quotation marks, and citation omitted)). Therefore, we hold that Defendant's convictions for both shooting at a dwelling or occupied building and shooting at or from a motor vehicle do not violate double jeopardy.

**CONCLUSION**

**{18}**    For the above reasons, we affirm.

**{19}    IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**MEGAN P. DUFFY, Judge**