This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                        **NO.   31,762**

**JOSUE V. MARES,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Ross C. Sanchez, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Acting Chief Public Defender
Vicki W. Zelle, Assistant Public Defender
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**KENNEDY, Chief Judge.**

{1}    Josue Mares (Defendant) appeals from the district court's judgment on appeal, affirming the metropolitan court judgment convicting him after a jury trial of aggravated battery against a household member. Defendant's sole issue on appeal is whether the district court erred in excluding extrinsic evidence and cross-examination of Victim about prior instances of allegedly suicidal and erratic, out-of-control behavior. We affirm the metropolitan court's evidentiary ruling and Defendant's conviction.

## I.    BACKGROUND

{2}    In the early morning hours of August 3, 2007, Victim sustained injuries that were documented and undisputed in photographs admitted at the jury trial in metropolitan court. The question for the jury was how Victim sustained them.

{3}    Victim testified that Defendant beat her. She also testified that the beating occurred after she aggressively confronted Defendant and another woman while they were riding bicycles at about 1:30 a.m. on August 3, 2007, near the house that Defendant and Victim shared. Victim testified that after Defendant stepped between her and the other woman, Victim punched Defendant in the stomach. She returned to her car, found a steak knife, and stabbed herself in the chest with it. Victim further testified that Defendant became enraged and threw her in her car by her hair and ears.

Defendant hit Victim in the head and punched her in the face with his fist. While driving fast and erratically, and swerving and driving over curbs and the median, Defendant then drove home with Victim. While dragging Victim out of the car by her hair and ears, Defendant continued to hit and kick her and smashed her on the ground against a wall. After hearing Victim's screams, Defendant's brother, Pablo, intervened, pulling Defendant away from her. A relative drove Victim to the hospital where she was treated and released. Later that day, Victim's friends persuaded her to report the incident to police.

{4}     Sixteen hours after the incident, the police interviewed Victim and photographed and documented her injuries. An officer testified at trial that Victim's injuries appeared to have recently occurred. The photographs showed that Victim had a black eye, cuts on her face, and bruises on her ribs and body. The officer also testified that, based on his eleven years experience as an officer and his handling of several hundred domestic violence cases, Victim's cuts and bruises did not appear to be self-inflicted wounds.

{5}     Pablo testified that about 2:00 a.m. on August 3, 2007, he heard a car drive up and Victim screaming. Pablo stated that he observed Defendant trying to leave the yard, and Victim was pulling on Defendant's clothes to keep him from leaving. Pablo

3

further testified that he did not notice any scratches or bruising on Victim's face or body, and he did not notice that Victim had a black eye.

{6} Defendant testified at trial that, after Victim stabbed herself, she voluntarily entered her car. Defendant further testified that his first priority and concern was to drive Victim to the hospital for treatment of the self-inflicted stab wound. Defendant also testified that when Victim found out that he was driving her to the hospital, she tried to jump out of the car. Defendant then swerved the car to keep her from jumping out, which knocked her back into the car. Defendant further testified that when Victim refused to go to the hospital, he took her back to the house. Defendant's testimony did not mention battering Victim other than to describe that she was knocked back in the car when he swerved to keep her from jumping out. Defendant did not describe Victim's injuries, or how she sustained them. On cross-examination, Defendant stated that he was not afraid of Victim, stating that she has a "way of overreacting," but she usually "takes it out on herself" rather than anyone else.

{7} Defendant's defense at trial was that Victim's injuries were either self-inflicted, or they were unintentionally caused by him as he tried to help her, or as he tried to get away from her. Following Victim's direct testimony, Defendant requested permission to ask her and other witnesses about her prior suicide attempts and other erratic behavior, which were alleged to have occurred prior to August 3, 2007. Defendant

argued that this evidence was relevant to show why he reacted the way he did on August 3, 2007. When the metropolitan court denied Defendant's request to admit the testimony, Defendant made an offer of proof. Defense counsel stated that Pablo would testify that, on a prior occasion, Victim had behaved "erratically in front of his children." Defendant also stated that he and Pablo would testify that, prior to August 3, 2007, Victim had attempted to cut herself using a knife, but, on that occasion, Defendant had succeeded in taking the knife away from her. During the offer of proof, Defendant stated that Victim had told her friends that he assaulted her using the knife. Defense counsel also stated that if Victim was asked whether she had ever attempted to hurt herself prior to August 3, 2007, she would answer "yes."

{8}     The metropolitan court ruled that, because the prior knife incident was disputed, the testimony would occasion a mini-trial that could mislead, confuse, or distract the jury from resolving whether Defendant battered Victim on August 3, 2007. The metropolitan court also considered that the proposed testimony constituted an improper attempt to show that Victim had a propensity to hurt herself and, therefore, had done so on August 3, 2007. Moreover, the metropolitan court ruled that any alleged prior suicide attempts or erratic behavior had nothing to do with whether, on August 3, 2007, Defendant battered Victim, causing her injuries.

{9}     The metropolitan court stated, however, that it would allow Defendant to testify that he was not particularly sympathetic with Victim because he had been through a lot with her.  The metropolitan court also allowed the defense to ask Victim whether her injuries were self-inflicted and to ask other witnesses whether they believed her injuries were self-inflicted.  During her testimony, Victim admitted that she was angry and jealous and that she acted aggressively and irrationally on August 3, 2007, including threatening the other woman, punching Defendant in the stomach, and stabbing herself in the chest with a knife.

{10}     The jury was instructed on both aggravated battery against a household member and the lesser charge of battery against a household member.  The jury was also instructed that it must find that Defendant's act was "unlawful" and further was instructed that "[a]ggravated battery against a household member does not include a touching for purposes of lawfully leaving the residence."

{11}     The jury convicted Defendant of aggravated battery against a household member.  Defendant appealed to the district court for an on-record review.  The district court affirmed Defendant's conviction from which Defendant appeals.

**II.     DISCUSSION**

**A.     Arguments**

{12} Defendant contends that the metropolitan court "erroneously blocked every defense effort to reveal the chronic nature of [Victim]'s out-of-control behavior to the jury." Defendant argues that Victim opened the door to admission of the testimony when she characterized her self-inflicted injury as not being something she would ever do. Defendant also argues that Victim's prior conduct was relevant to whether he intended to injure her and whether the physical force he applied to her person was unlawful. Defendant wished to portray Victim's behavior as a character trait highly pertinent to his defense that she caused injury to herself in her extremely distraught state, or that any injury he caused was not intentional, but rather the result of incidental contact as he tried to deal with her first to get her to the hospital and then to extricate himself from her grasp. Defendant also contends that the prior instances bear on Victim's mental stability and her inherent capacity to reliably perceive, recall, or narrate facts. Defendant further points out that having been dumped for another woman, Victim "had a powerful motive to give a biased version of the facts if only to get back at [him]."

{13} To the extent the metropolitan court characterized the evidence as irrelevant and inadmissible "propensity" evidence, on appeal, Defendant argues that cross-examination should have been allowed under the exceptions listed in Rule 11-404(B) NMRA as "proof of motive, opportunity, intent, preparation, plan, knowledge,

identity[,] or absence of mistake or accident[,]" or to contradict Victim's false claims that stabbing herself was an isolated incident. Defendant further argues that in refusing to allow him to cross-examine Victim regarding her prior conduct, the metropolitan court violated his confrontation rights. Finally, Defendant contends that, even if he did not preserve his confrontation clause violation, the metropolitan court's failure to admit the prior conduct testimony is fundamental error.

{14} The State argues that the metropolitan court did not abuse its discretion in denying testimony of Victim's prior, allegedly suicidal, or erratic, behavior because it is not relevant to whether Defendant battered Victim on August 3, 2007. The State also contends that, to the extent there may have been some relevance to the testimony, any probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or because it would be misleading to the jury. The State claims that, at trial, Defendant only argued that evidence of Victim's alleged prior suicide attempts and erratic behavior were admissible to show why Defendant acted the way he did on August 3, 2007. As such, the State argues that Defendant did not preserve his arguments on appeal and that the metropolitan court erred under specific rules of evidence or under the confrontation clause. Finally, the State argues that the metropolitan court's ruling against admission of the prior conduct testimony did not constitute fundamental error.

8

**B.      Lack of Preservation**

{15}     On appeal, Defendant states that his purpose for presenting specific instances of Victim's prior conduct, by cross-examination of her and via other witnesses' testimony, was to impeach her testimony to provide evidence that she had a propensity to hurt herself and to justify the beating.  Defendant relies on specific rules of evidence to support his arguments that instances of Victim's prior conduct were admissible, including Rule 11-404(B), Rule 11-405 NMRA, and Rule 11-403 NMRA. Defendant argues that the metropolitan court was "well aware" of the basis for error he asserted because the defense argued that the metropolitan court was cutting out any and all evidence of Victim's chronic, out-of-control, behavior as irrelevant when it was highly relevant to her credibility in this case that "revolves around who and how did those injuries get inflicted."  With regard to preservation of a confrontation clause argument, Defendant contends that the metropolitan court was "well aware of the error that the defense was trying to prevent, or get corrected" because defense counsel's offer of proof stated that if Defendant were allowed to cross-examine Victim as to whether she has ever attempted to hurt herself, she would answer "yes."  We are not persuaded.

{16}     "In order to preserve an error for appeal, it is essential that the ground or grounds of the objection or motion be made with sufficient specificity to alert the

9

mind of the trial court to the claimed error or errors, and that a ruling thereon then be invoked." *State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 (internal quotation marks and citation omitted). "The failure of [the] defendant to point out the claimed errors and to bring them to the attention of the trial court prevent his relying on them for the first time on appeal." *City of Portales v. Shiplett*, 1960-NMSC-095, ¶ 6, 67 N.M. 308, 355 P.2d 126. "We do not reach issues on which the district court had insufficient opportunity to rule." *State v. Onsurez*, 2002-NMCA-082, ¶ 14, 132 N.M. 485, 51 P.3d 528. These principles similarly apply to Defendant's claim on appeal that at trial he preserved his contention that his rights under the confrontation clause were violated. *See State v. Lucero*, 1986-NMCA-085, ¶ 16, 104 N.M. 587, 725 P.2d 266 (concluding that the confrontation issue was not preserved because the defendant's objection asked merely for an evidentiary ruling and did not alert the district court to a constitutional error); *see also State v. Mora*, 1997-NMSC-060, ¶ 47 n.1, 124 N.M. 346, 950 P.2d 789 (holding that the defendant's failure to object on confrontation grounds or general constitutional grounds resulted in abandonment of his confrontation clause argument on appeal).

{17}     We have reviewed the recording of Defendant's motion to admit the testimony, and we agree with the State that he did not adequately preserve his claims of error on appeal under any specific rules of evidence or under the confrontation clause. Thus,

Defendant's claims of error may not be considered on appeal unless they amount to plain or fundamental error. *See State v. Abril*, 2003-NMCA-111, ¶¶ 11-14, 134 N.M. 326, 76 P.3d 644, *overruled on other grounds by State v. Torres*, 2012-NMCA-026, 272 P.3d 689; *see also State v. Dietrich*, 2009-NMCA-031, ¶ 51, 145 N.M. 733, 204 P.3d 748 (noting that the defendant failed to preserve the confrontation issue before the district court and, therefore, this Court will analyze it only for fundamental error).

**C.     Plain Error**

**{18}**     Plain error is broader than fundamental error. *State v. Lucero*, 1993-NMSC-064, ¶ 13, 116 N.M. 450, 863 P.2d 1071. Plain error is not limited to situations in which an error results in the conviction of a defendant who is innocent of the crime for which he has been convicted. *Id.* Application of the plain error doctrine by an appellate court constitutes an "exercise of remedial discretion." *Abril*, 2003-NMCA-111, ¶ 14 (internal quotation marks and citation omitted). As in *Abril*, we decline to address the issue of plain error in this case because Defendant has not briefed it. *Id.* (citing *State v. Romero*, 1994-NMCA-150, ¶ 1, 119 N.M. 195, 889 P.2d 230).

**D.     Fundamental Error**

**{19}**     The doctrine of fundamental error is applied only under extraordinary circumstances to prevent the miscarriage of justice and if the circumstances implicate

11

"a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *State v. Barber*, 2004-NMSC-019, ¶ 18, 135 N.M. 621, 92 P.3d 633 (internal quotation marks and citation omitted); *State v. Cunningham*, 2000-NMSC-009, ¶ 21, 128 N.M. 711, 998 P.2d 176. For example, if a defendant appears indisputably innocent of the crimes for which he was charged, or where it would shock the conscience to permit the conviction to stand, the convictions may be reversed under a fundamental error analysis. *See id.* ¶ 13.

{20} Contrary to Defendant's assertions on appeal, the trial testimony indicates that Defendant's defenses were presented to the jury. The metropolitan court allowed Defendant to testify that he was not particularly sympathetic with Victim because he had been through a lot with her. The jury could well imagine the truth of that statement given Victim's own testimony about her motives and behavior in the early morning hours of August 3, 2007, prior to her testimony about the beating. Further, the metropolitan court allowed Defendant to ask Victim and other witnesses whether her injuries were self-inflicted. We hold that the metropolitan court did not deprive Defendant of presenting to the jury his theory that Victim may have injured herself over and above having admittedly stabbed herself in the chest.

{21} Further, the jury also considered Defendant's and other defense witnesses' versions of how Victim sustained her injuries, which contrasted with her testimony.

12

Defendant testified that he was simply trying to help Victim. Pablo testified that Defendant was trying to get away from Victim. Victim herself testified that she was acting aggressively, irrationally, and suicidal on August 3, 2007. Defendant's version of events indicated to the jury that he did not intend to hurt Victim and that he acted lawfully in trying to help her. Pablo testified that he observed Defendant trying to get away from Victim and that he did not notice that she had injuries at that time. Given the defense testimony, the jury was properly instructed that it must determine whether Defendant acted intentionally and whether he acted unlawfully under the circumstances, including that it was not unlawful for a touching to occur while he was trying to leave the residence.

{22} Even if we were to consider that Defendant adequately preserved his arguments under specific rules of evidence, we cannot say that the metropolitan court erred under the abuse of discretion standard of review for admission of this testimony. *See State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72 ("We review the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse."). There was no need for Defendant to prove by specific instances of Victim's prior conduct that she engaged in suicidal and erratic behavior on August 3, 2007.

**{23}** First, Defendant's desire to show that Victim injured herself, because she allegedly tried to hurt herself on a prior occasion, is, as the metropolitan court recognized, inadmissible propensity evidence irrelevant to the jury's consideration of how she sustained her injuries on August 3, 2007. *See* Rule 11-404(A); *see also State v. Baca*, 1992-NMSC-055, ¶ 5, 114 N.M. 668, 845 P.2d 762 (citing Rule 11-404 and stating that "[i]n general, a person's character is not admissible for the purpose of proving his conformity therewith on a particular occasion").

**{24}** Second, Victim admitted, and Defendant described, her aggressive and irrational behavior that night. Victim and Defendant testified that she threatened the other woman, punched Defendant in the stomach, and stabbed herself in the chest with a steak knife. The jury was presented with the opportunity to assess Victim's credibility given her irrational acts and her possible bias or motives as the apparently "scorned woman" who may have wanted to get back at Defendant. The jury also had the opportunity to determine whether, under the circumstances related, Victim was able to clearly and accurately remember and describe the incidents of that night. Further, the jury had the opportunity to consider whether Defendant acted lawfully and whether he battered Victim intending to injure her, or unintentionally did so.

**{25}** In *State v. Montoya*, this Court reviewed whether the district court's limitation on the defendant's cross-examination of the victim about her prior sexual history was

a violation of the confrontation clause. 2013-NMCA-076, ¶¶ 25-26, ___ P.3d ___, *cert. granted*, 2013-NMCERT-005, ___ P.3d ___ (No. 33,592, May 24, 2012). Because the defendant sought not to confront the victim, but to use her to introduce additional substantive evidence unrelated to the truth or accuracy of her behavior on the date in issue, this Court held that the defendant's confrontation rights were not implicated or violated. *Id.* Similarly, in this case, we view Defendant's efforts to admit the testimony set forth in the offer of proof as unrelated to the truth or veracity of Victim about what happened on August 3, 2007. *See* Rule 11-608(B)(1) NMRA; *see also State v. Wyman*, 1981-NMCA-087, ¶ 10, 96 N.M. 558, 632 P.2d 1196 (discussing that questions concerning embezzlement, burglary, auto theft, and larceny involve dishonesty, were probative as to truthfulness, and were proper cross-examination under Rule 11-608(B)). While Defendant argues that Victim's own testimony "opened the door" to admission of prior instances of alleged suicidal behavior when she characterized her self-inflicted injury as not something she would ever do, we note that, at trial, Defendant did not point specifically to any statement of Victim's to indicate that she had "opened the door." Moreover, Defendant's offer of proof presented a prior knife incident that he wanted to portray as a prior instance of Victim's suicidal behavior at the same time that he stated that she saw that incident as an assault by him against her. The metropolitan court did not err in refusing to

consider that Victim had "opened the door" to admission of testimony regarding this prior incident about which the motives and intent of the parties was in dispute.

{26} Third, Defendant did not claim that he beat Victim in self-defense. Defendant admitted he was not afraid of Victim. A claim of self-defense may have made any of Victim's known character traits for violence against Defendant or others an essential element of the crime charged. *See* Rule 11-405(B); *see also Baca*, 1992-NMSC-055, ¶ 6 (noting that "[t]his Court established in 1923 that specific instances of the victim's conduct may be admitted when the defendant claims self-defense and when those instances would reflect on either whether the defendant was reasonable in his apprehension of the victim or on who was the first aggressor"). Defendant has cited no case law that indicates that a prior disputed suicide attempt justifies or excuses his alleged battery of Victim. Moreover, because Victim's character traits were not in issue in this case, the State appropriately did not present reputation or opinion witnesses pertaining to them. *See* Rule 11-405(A), (B). As such, Defendant was not entitled to cross-examine the existing State witnesses about irrelevant prior specific instances of Victim's conduct. *Id.*

{27} Finally, even if the specific instances of prior conduct may have had some relevance, we believe the metropolitan court acted within its discretion in concluding that any probative value would mislead, distract, or confuse the jury. *See* Rule 11-403

16

(stating that otherwise relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or it is misleading to the jury). In particular, since the alleged facts about the prior knife incident were in dispute, as the metropolitan court recognized, the jury would be required to determine who was telling the truth about them, rather than focusing on determining how Victim sustained the injuries incurred on August 3, 2007. *See State v. Bowman*, 1986-NMCA-014, ¶ 10, 104 N.M. 19, 715 P.2d 467 (recognizing that a metropolitan court can exclude evidence under Rule 11-403 if there is a danger of confusion of the issues or waste of time, or if the evidence would lead the trial proceedings into mini-trials on wholly collateral issues). Similarly, that Victim may have acted erratically in front of Pablo's children, on a prior occasion, is inadmissible propensity evidence and/or merely cumulative or collateral to matters already in evidence, as well as potentially confusing to the jury. Victim admitted jealousy, aggression, and a self-inflicted stab wound. Her testimony removed the need for testimony of past, out-of-control, or allegedly suicidal, behavior to establish the context of the events on August 3, 2007.

**{28}** We conclude that no fundamental error or substantial injustice occurred in this case. When the metropolitan court denied inquiry into specific instances of Victim's past, erratic, and/or arguably suicidal, behavior, it did not err under the applicable

17

rules of evidence, and it did not deny Defendant's right to confront his accuser about what happened on August 3, 2007. Rather, based on the conflicting versions of how Victim's injuries occurred, the jury could reasonably determine that, in the early morning hours of August 3, 2007, while perhaps understandably frustrated with Victim's jealous, aggressive, and out-of-control suicidal, behavior, Defendant intentionally and unlawfully punched her in the face and hit and kicked her, causing her the painful temporary disfigurement and injuries displayed in the photographs admitted as evidence at trial. *See State v. Trujillo*, 2002-NMSC-005, ¶ 28, 131 N.M. 709, 42 P.3d 814 ("It is the exclusive province of the jury to resolve factual inconsistencies in testimony. We will not reweigh the evidence or substitute our judgment for that of the jury." (alteration, internal quotation marks, and citation omitted)); *see also State v. Hughey*, 2007-NMSC-036, ¶ 16, 142 N.M. 83, 163 P.3d 470 ("It is the role of the fact finder to judge the credibility of witnesses and determine the weight of evidence.").

**III.   CONCLUSION**

{29}    We affirm Defendant's conviction for aggravated battery against a household member.

{30}    **IT IS SO ORDERED.**

18

_____

**RODERICK T. KENNEDY, Chief Judge**

**WE CONCUR:**

_____

**CYNTHIA A. FRY, Judge**

_____

**MICHAEL E. VIGIL, Judge**

19